The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is Libin Abdi Ali v. Merrick B. Garland, Appeal Number 21-1296. Attorney Fonk Bonner, please introduce yourself for the record and proceed with your argument. Attorney Fonk, before you start, I just want to welcome to the bench today Judge Gary Katzmann from the Court of International Trade who sat with us a number of times and we're appreciative for his willingness to do so again. So welcome. Okay, Attorney Fonk Bonner, go ahead. And I'll reintroduce myself. May I please the court? Good morning. My name is Edgar Loy Fonk Bonner. I represent the petitioner Libin Abdi Ali. And good morning to the Honorable Court. May I proceed? Yes, please do. Thank you. Mr. Ali presents a number of characteristics which, for reasons that are set forth in his brief, make him an undesirable person in Somalian society. As far as we know, the petitioner has never set foot in Somalia prior to very recently when he was removed by the Department of Homeland Security. And for the reasons set forth in the brief, his personal appearance, things that he cannot change about himself, and of course the criminal history that follows him to Somalia, he's under grave threat of torture, both from Al-Shabaab, which is running amok in Somalia and has done so for a number of years now, and from the various security forces whose ostensible purpose is to protect him from Al-Shabaab and from others who would threaten his safety and well-being. Mr. Ali had the testimony of Ms. Mary Harper, who was certified as an expert on Somalia, who was a BBC correspondent on that part of the world, who testified that these very security forces posed, quote, a very, very grave threat to Mr. Ali because of his personal characteristics. She was cross-examined by a DHS attorney who asked her, do you specifically know of any individual who has been taken and tortured by the security forces, who are in fact Western, referring to the subject, who has lived in the West and returned to Somalia, to which Ms. Harper answered unequivocally, yes. There was further testimony from a second expert witness, Professor Abdi, who stated again unambiguously that she believes Mr. Ali would likely be tortured if he is returned to Somalia. The government's argument turns on the question of whether he would in fact be tortured by government forces. That's really the crux of the respondent's argument here. It's not whether he would be tortured, right? There's little question that Al-Shabaab would have ill will toward the petitioner for a wide variety of reasons. The question is would the Somalian government acquiesce? I thought there were two different arguments. You had one argument about the risk from the security forces and one argument from the risk from Al-Shabaab, which I thought were separate contentions. That's correct. That's absolutely true, Your Honor. I believe the threat comes from both sources. Of course, the petitioner is aware that he must demonstrate that if he were to be tortured, it would occur with the acquiescence of government authorities. Can I ask you one question before you go further? Your Honor. Do you understand the IJ to have made a finding about the likelihood of the severity of the mistreatment he would encounter? Do you follow what I'm saying? My understanding of the IJ's decision is that it's focused on either the motivation of the security forces in inflicting mistreatment on your client or on the degree to which the government would intervene to stop Al-Shabaab from inflicting such treatment. I didn't see the IJ making a finding about the likelihood that the mistreatment he might suffer would fail to be severe enough to constitute torture. I believe Your Honor is correct. That finding is not in the IJ's decision in order, nor is it in the BIA's decision. But I understand the BIA's decision with respect to the security forces to turn, if I'm reading it right, on a finding that your client had not shown a likelihood that the mistreatment he would receive would be severe enough to constitute torture. If I may refer to the decision? Without any finding about why he would be mistreated by the security forces. Is that how you read it? That was not how I read it, but I will look at it now, Your Honor, because of course that's a critical question, whether the BIA, in fact, affirmed the IJ on the findings that were actually made. And I'm turning to the decision now. The BIA's decision as to the question of torture is stunningly brief. It's one paragraph, in fact, with respect to government forces. I see it, Your Honor. It does appear to be entering a finding that he may be subject to some harm, but not a harm that rises to the level of torture. That does appear to be the plain language of the IJ. So I guess what do we do, what has been argued about this point, because we have a finding, as far as I can tell, by the IJ, that the reason his claim with respect to the security forces failed is because of the motivation of the security forces members who would inflict the mistreatment. And then we have an affirmance of that finding by the BIA that seems to be predicated on a finding that the mistreatment he'll receive, however motivated, won't be severe enough to be torture. I see it, Your Honor. If that is the case, then I respectfully submit that it should be remanded to the BIA so that it can address that specific question. What was the argument that was made to the BIA vis-à-vis the IJ's finding? The argument made to BIA... Four minutes remaining, four minutes. With respect to the security forces. The argument was that the IJ overlooked the evidence submitted by the expert witness, Ms. Harper, that in fact the security forces themselves would act as persecutors or would fail to protect Mr. Ali from al-Shabaab. And so I take your conclusion that the BIA never addressed that contention, or never made any explanation of why that contention was wrong. That's correct. Can I ask a question in terms of what we're reviewing here? So we have the BIA opinion, we have the immigration judge's opinion, we have, as Judge Barron has referenced, the BIA opinion which says, however we agree with the immigration judge's finding, after considering risk of torture from all sources in the aggate, that the respondent has not shown a likelihood of torture. Now, do we also look to the IJ opinion? Or are we confined to the BIA opinion? May I reply, Your Honor? Yes. Respectfully, the court would look to both, in that the BIA is affirming and adopting the IJ's findings. In those instances, the court has jurisdiction to review both the BIA's decision and the underlying IJ decision. I can cite to the... That's... Let me just understand that the passage that Judge Katzmann just asked you about, that finding, which refers to all forces, so that's both al-Shabaab and security forces. That passage, as I understand it, comes with a parenthetical and a cite, which I understand to be referencing only the severity of the violence that would be inflicted and doesn't address the motivations of the forces, whether Shabaab or security forces that would be inflicting the violence. I see it, and Your Honor is correct. That is the case. And is there any other finding by the BIA with respect to the motivation of either al-Shabaab or the government forces? I know there's a finding with respect to whether the government is motivated to stop al-Shabaab by the BIA. The BIA has a finding about whether the security forces or al-Shabaab's motive factored into the analysis that there was no likelihood of torture. That's completely absent from the Board's decision. One last question. Did you make an argument that government forces were unable to stop al-Shabaab from committing the torture as opposed to unwilling? I didn't see it in the… No. Okay. Just the unwilling is the only argument that you made. Correct. Yes, that's correct. I have a question, counsel. In looking at the BIA's decision, and also I looked at the IJ's decision, the testimony of the expert was, in fact, considered, and the agency also considered the fact that it made a finding that the Somali government is actively fighting to control the armed terrorist organization, therefore denying the relief you're claiming for your client. But isn't that a finding of fact that we should give deference to because the agency did weigh the evidence? Right. The fact that the Somalian government is, and this language recurs over and over again in asylum withholding cat denials, that a given government is taking steps to address some issue with forces that would persecute or torture someone. I take your Honor's point. The issue here is that there's evidence in the record from Ms. Harper, the expert witness, that these security forces whose task it is to fight al-Shabaab or to defend civilians from al-Shabaab refused to do so. In other words, should the court grant a deference? I think it's clearly an error. I don't think there's any reading of the testimony and of the material submitted by Ms. Harper that allows a reading that would support the idea that these forces themselves are not a threat or that these forces would protect Mr. Ali from it. Whether or not they are nominally fighting al-Shabaab is a separate matter entirely. This happens all the time. Governments take steps to address certain things while not actually taking steps to do so, while not actually protecting its civilians from active threats, and that's the situation here. So is it your position that there's substantial evidence supporting the BIA's factual finding that Ali will undoubtedly be at some risk of harm in Somalia, which include beatings? You're asking that we affirm that. You're also asking, am I right? In part, because I think the decision is worded in such a way as to minimize the severity. The way that paragraph is structured, the purpose of that paragraph, the rhetorical purpose, is to diminish the seriousness of the harm that he would suffer. And beatings alone are generally not considered to be sufficient to rise to the level of torture. So I would not ask that your honors affirm its finding that that is the extent of the harm he would suffer. The harm he would suffer would certainly include beatings, but it would also include greater harm that does rise to the level of torture. It's an unfortunately broad and vague and generic decision, which is why we're left to try to read between the lines. Well, just to follow up on Judge Katzen's question before we end, if you'd just answer briefly, it's necessary to your argument that the harm that is upon your client that you claim would be likely to occur would rise to the level of torture? Correct, your honor. So if the BIA has made a finding that it would not, you lose. Unless you can show that was wrong and you're challenging that finding. Correct. So was that finding challenged? I mean, how does that enter into the case? I think what's throwing me off is I don't see a finding on that point by the IJ. In your briefing, are you taking it as, I mean, just what do we do in this situation? We have a BIA finding, which you concede, and as I read it, is a finding about severity. You have an IJ finding that doesn't focus on severity. We have an appeal to the BIA challenging the motivational finding of the IJ. I mean, just help me out. Where is the argument in which the BIA was apprised of the fact that you thought the risk of harm to your client was severe enough to constitute torture? Sure. I can find it in the language of my brief to the board. Well, if it's in the brief, we'll find it. It is. And, again, it may very well be here, Your Honors, that the board engaged in fact-finding and overstepped its boundaries here. That may be what's occurring. But, again, I see the IJ's decision as turning rather on the source of the harm that Mr. Lee would experience and not focusing on severity, as Your Honor noted before. Thank you. Attorney Finkbonner, thank you. Please mute your audio and video. Attorney Sarko, please unmute your audio and video and proceed with your argument. Thank you, Your Honors. Good morning, Your Honors. My name is Michelle Sarko, again, representing the Attorney General in this matter. So the issue here is whether the evidence compels the conclusion that Mr. Lee will be tortured by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity if he's removed to Somalia. Now, the two groups that he puts forward as potential people who would torture him are the al-Shabaab organization, which is a terrorist group that the government of Somalia is fighting, along with assistance from the African Union and special forces from the U.S. who's training the Somali forces to be able to go up against al-Shabaab. The Somali police are also in Mogadishu looking for al-Shabaab, who has done some terrorist acts in their hotel, some other things like that. And so they are fighting and trying to fight al-Shabaab wherever it pops up. And so I would say that is evidence, and I think that's clear in the case law, that if the government is trying to fight the group, whether or not it's successful in tamping them down or eliminating them, that doesn't preclude finding that the government has not acquiesced. In their torture of individuals. Go ahead. I'm sorry. No, go ahead. Looking at the IJ opinion, right, the IJ opinion does not really, would you agree with me, does not really make a determination as to what would be torture in this case? You know, the problem is, I would have to go through and reread it again, but I think, let me just look real quick. Showing slides. So. OK, so for the al-Shabaab. It doesn't, well, I don't see whether it specifically makes a finding of torture, it kind of combines the two, whether it's torture and whether it's with the consent or acquiescence of the public official. So I guess you could read it as making both, because in order to get Kat, you would have to show both. But he rejects it, so you only need to reject one. Yeah, if they haven't shown torture or, yes, that's true. So. All right. He clearly rejects it on the acquiescence grounds. I don't see the IJ. For al-Shabaab, I think that's correct. OK. With respect to al-Shabaab, just before you get to security forces on the second point of Judge Katzen's question, but just since you're on al-Shabaab. Yes. The IJ, if I'm reading it right, doesn't appear to address petitioner's contention that the reason the government's resistance to al-Shabaab fails to show that they would not acquiesce in the harm al-Shabaab would inflict on the petitioner. Is that government forces will be sympathetic to the mistreatment of the petitioner if al-Shabaab catches him. I don't see the IJ addressing that argument, which seems to be the argument the petitioner's making. Not that the government is in league with al-Shabaab in general, but that with respect to how this type of class of person will be treated if captured by al-Shabaab, that security forces then will not resist al-Shabaab's mistreatment. I just don't see the IJ addressing that point, do you? Well, I think there is in the... So, um... So, what's going on here? So, basically she says, or the IJ says that this is insufficient, specific showing that the respondent will be subject to severe pain or suffering or physical or mental fire with that instigation of or consent or acquiescence of a public official or other person. So, I don't... I think that's what the... I mean, that's what we have from the IJ's decision. Basically, I think the IJ took the position that the security forces either weren't trained enough or their main motivation was to protect themselves if there was an al-Shabaab attack first. And so, you know, I guess if that's a... maybe not necessarily not wanting to, but maybe unable to if they don't have the adequate training to resist against al-Shabaab. So, that's what I get from the immigration judge's decision. You may disagree with that. Maybe I'm just puzzled. That sounds favorable to the petitioner's position rather than unfavorable. No, because not that they're not unwilling, but if they're not able to because they don't have adequate training, that's not enough to show that there's acquiescence. That's the case law. Even if you're willing but unable to, that's not enough to show acquiescence. Councilor, let me ask you a similar question to the one I asked your opposing council. I'm sorry, just help me just before you do. Yes. What's your reporting for the proposition that unable is not enough? Well, you can send a 28-Jailor if you have authority. Yeah, I think I'll have to do that because I can't think off the top of my head, but yes. Okay, I'm sorry to interrupt you. Go ahead. That's okay. Yeah, my question is similar to the one I posed to opposing council. The BIA made a finding that the Somali government is affirmatively trying to fight the al-Shabaab, but what's the government's position in that? Council suggests that it's clearly erroneous. There's no such evidence on the record. I know that petitioner also argues that the State Department's country report on Somalia was not adequately considered by the agency. How would you address this? Well, I think I've put sites in my brief to testimony from Witness Harper and I think even Witness Abidi did acknowledge that there was government operations that went up against al-Shabaab and was fighting them in southern Somalia and other places in Somalia. And there is, I think in the country reports, I think I had citation to a State Department report that had the citations to where they were getting financial support, they were getting helicopters from the African Union in order to do attacks against al-Shabaab, they were getting training from the U.S. Special Operations Forces. So I think there's ample evidence in there that the government, in conjunction with African Union and other governments, they were giving supplies, U.S. government was giving supplies, military supplies, so that the Somali forces could go after al-Shabaab. So in other words, your argument would be that the ALJs, the IJs, basically you weighed the evidence, considered the expert testimony, considered that other evidence you're talking about, and then it's, from our perspective, it's substantial evidence, not clearly erroneous, correct? Right. So, that's right. And then, also, the board, so the IJ's job is to find what's likely to happen, facts. So, as to whether it amounts to torture, that's a legal issue, that's not a factual issue. So, why isn't that, you know, why aren't beatings torture? Well, whether it amounts to torture, that is a legal issue. Whether there's going to be beatings is a factual issue. Is there a likelihood there's going to be beatings? Is there a likelihood, you know, that there will be shootings? Those are factual issues. Whether it amounts to torture, severe enough, that's a legal issue. And I can also put that in a 28-J letter, some cites to that, if you like. So, is that an issue that's before us? Yes, because... In other words, as a matter of law, do we reach the question? Yes, because the board... Does beatings constitute torture? The board's decision says he hasn't been tortured in the past. Undoubtedly, he's at some risk of harm in Somalia, which may include harassment, ostracization, or even beatings. However, we agree with the immigration judge's finding, after considering the risk of torture from all sources in the aggregate, the respondent has not shown a likelihood of torture. When you look at the parenthetical to that, the finding is about the... The BIA seems to be agreeing with a finding that beatings are not torture. Well, not all beatings, but beatings were described in this case. Where is the finding by the IJ that the BIA purports to uphold that the mistreatment that the petitioner will suffer is not severe enough to rise the level of torture? I just don't see that finding that the BIA purports to be affirming. Okay, here. Page 10 of the IJ decision. So, it was talking about... I guess it was talking about the government forces here. So, the actions that are described... It's insufficient to be specific, showing that the respondent will be subject to severe pain or suffering, whether physical or mental, by or at the instigation of. So, it's a combination there, because you start with severe pain. How do we know it's a combination, and not on the last piece? It doesn't say, will not be subject to severe pain. And also, if subjected to severe pain, it won't be by the forces. It says it won't be subject to severe pain by the forces. That's naturally read to be a dependent statement, which the reason it's not torture is because it won't be inflicted by the government forces, not an independent holding that it won't be severe enough. I don't agree with that, because this is insufficient to be a specific showing that the respondent will be subject to severe pain or suffering, whether physical or mental, by or at the instigation of, or with the consent or acquiescence of the public official or other person acting in official capacity. So, to get CAT, you need to have both of those. And so, I think that that's, okay, and then the next sentence. Respondent has not shown it's more likely than not, based on the evidence before the court that he would be tortured in the proposed country of removal based on this current state of the law. So, I think it's actually both findings there. I think that's how the board read it as well. And that parenthetical after the board's sentence saying that there wasn't a likelihood of torture, describes torture as an extreme form of cruel inhuman treatment and does not include lesser forms of cruel inhuman degrading treatment or punishment that do not amount to torture. So, is my time up? Your time is up. Okay. Thank you. Thanks. That concludes arguments in this case. Attorney Fonkbonar and Attorney Sarko, you should disconnect from the hearing at this time.